Our next case on the call of the docket is agenda number 12, case number 114655, Shannon A. Mayfield v. Howard R. Mayfield. Counsel for the appellant, please proceed. Thank you, Mr. Chief Justice, members of the court, Mr. Lynch. I want to thank you to begin with. Your name for the record. Oh, Bert Dancy with Aleph Dancy and Vosage, sorry. Thank you. I want to thank you to begin with for taking the case, both from Mr. Mayfield, my client, and also in talking to the matrimonial bar in the Tenth Circuit from them and some judges in the field as well who said they thought some direction and attention needed to be brought to this particular area. And the second thing, it's more in response to the AG's brief, but I had the privilege of working with Jay Alloy in the Third District many years ago. And when I was first starting out, he cautioned me to be wary of ad hominem attacks and ad hominem arguments in the other brief, because they frequently were designed to divert from the substance of the legal position. When we were before the Fourth District, it was a spirited and interesting oral argument, and one of the things they started out real early saying to me was, okay, what do you want us to do? What are you saying we should do? And first off, contrary to the AG's brief, it's clear it's income. It's clear work comp is income for purposes of child support purposes. I didn't make that argument before them. I accepted that. And so the question becomes, what is an appropriate and fair approach that balances all the interests? And I think the first thing is to establish clearly for the circuit courts that this is a matter of discretion. The standard of review is abuse of discretion. In this case, Judge Houchen did not believe he had any discretion. In his order, he clearly says he was compelled by Dodds to award the 20 percent. So I think it's important to let the lower courts know that they have discretion in this field and that they may exercise appropriately that discretion. The other thing that I would answer to the Fourth District, and I put it in my briefs as well, and that is simply to approach that discretion with a focus on certain factors that are relevant to trying to make a fair and reasonable division and assessment and order in these cases. And one of it, the principle one to start out with, I think, is the nature and the extent of the injury and the impact economically and life-wise on the injured worker that receives a settlement approach. If it is a life disability, if he's not or she is not going to be able to work anymore, that is a salient factor that I would expect the court to factor in. The other thing that I think is a factor, and I'm not pretending to be exhaustive or having got all the appropriate factors, but the other thing is the relative economic positions of the parties. If Shannon were making $120,000 a year and Chelsea were 15 years old, I think that would impact a circuit court's decision on whether Howard, who no longer is able to work and has opted for the lump sum settlement and has to live on it and or social security disability the rest of his life. It seems to me the relative economic position of the parties is a relevant position. Counsel, presumably when you discussed ad hominem tax, it would be in relationship to the faxes that are applied to Howard in this case. And I'm just wondering, is there something a little disingenuous about an argument that Howard has to live on the money if indeed the allegations are correct that he used the money to remodel the house and buy hunting land and buy a motorcycle? Is that what you're referring to as an ad hominem? The ad hominem tax are focused in part on that, Your Honor. Isn't that relevant to show that or rather to be contrary to the argument that courts should exercise their discretion to realize that he has to live on this money when he's spending the money on some of these items that they mentioned? And I think Howard has realized the short-sightedness of his choices there. And so I think that's a relevant factor. And I think as whether he got social security or not, and he was denied social security, so we were not able to establish disability for purposes of the social security, and he may have to go back to work because he doesn't have any money part-time if he can. So I understand and appreciate the Court's question. And it went to, if I may be frank, in the appellate court I was asked by one of the justices whether Howard still rides his motorcycle. And I'm not sure the relevance of that question, and it concerned me. And Howard made poor choices, no doubt about it. It was like he hit the lotto, and, you know, he spent it poorly. So that may factor in, but, you know, except for maybe 20 percent of it, it was his money if he wanted to make poor decisions he was entitled to. Do you factor in, from what I understand, he did pay a lesser amount of child support because of his injury. Is that correct? I think that his child support over the years was reduced to whatever income he was getting. He was getting TTD, I expect. And as is typical in those cases, there was a modification to 20 percent of what that was. So my question is, does that in any way play into the allocation? Well, I would think that the entire context is appropriate for examination by a circuit court when they're trying to be fair and balance all the interests. One of the things that could factor in, if he had elected to receive periodic benefits instead of the lump sum, as he did, would the monthly payments have been greater than the amount specified in the settlement agreement? And if so, should the allocation of 20 percent of his settlement be based on that amount? I think the settlement laid out what his monthly payments would have been for the rest of his life. So should that be factored in, the amount that he would have received if he did not? No, I think I understand your question, sir. What I suggested that should be looked at is what 20 percent of that monthly amount would be, and that my prayer for relief was that it would have been appropriate to award 20 percent of what that would have been, plus 20 percent of anything else he has in income for the rest of the teenager's minority. And that would be an option for relief and a factor to be considered. May I ask a couple questions to make sure I understand your argument? You are agreeing today that this settlement amount is income. That is correct. So we don't have to talk about that anymore. That is correct. Take that off the table, okay. And so really what you're talking about is how should the court go about allocating that and what factors the court should take into consideration in terms of discretion, correct? That is correct. What happened in the trial court? Did you or your client raise this issue in the trial court? Did you ask the trial court for something less than 20 percent? Yes, we asked the trial court to reduce it to 20 percent of what his monthly amount would be, which would have been a considerable reduction from the lump sum, 20 percent. A mathematical application of 20 percent to the monthly amount. Not, you didn't ask the court to look at the age of the child or the length of the marriage or the ability to one side or the other to work or any of those kind of factors. That was not raised in the trial court, was it? Yeah. I argue that she was a teenager. The older son had during his minority decided to go over and live with Howard. That's why there was some, that's why some of the amount was different, because the way that, at least in the Tenth Circuit, what happens is they take 20 percent of the parent that has one child, 20 percent of the parent that has the other. They adjust that, and if there's a difference, they pay that, and that's the difference. So Howard had the boys. Howard had Zachary. And so those facts and that argument was made before Judge Hooshin. So ultimately, this is my question. And argument. Like the appellate court, I'm asking you, what do you want us to do? Do you want us to provide a checklist of factors to be used, or do we simply just say that you agree that this is an income and that the court has discretion to allocate this amount? No, I think it's important, and there's seven of you and one of me, and I would hope that that would be taken into consideration in terms of fashioning remedies. But, no, I think the nature and extent of the injury, his age, whether he can work again is a factor. I think the position of the parties economically is a factor. I think a critical factor is the age of the child. If it's a one-year-old child, it seems to me maybe 20 percent is just right on. But if it's a 15-year-old that may next year decide to move in with Howard, then it becomes almost a pure windfall to Shannon. And Mr. Lynch and I have had those changes of mind at 15 or 16 so that they live with the other parent. What is the error that you're alleging in the appellate court as to the issue of allocation? The error is there was no allocation. He didn't think he could allocate. I'm asking now about the appellate court. Where on page 9 of the appellate court decision is allocation of lump sum workers' compensation settlements for child support purposes. So the appellate court went through an analysis of whether or not the allocation by the trial court was correct or not. Right. What did the appellate court get wrong? The appellate court did not accept the fact that Judge Hushin, in his order of April 28, 2011, stated that he was compelled to follow Dobbs. Judge Hushin thought he had to do 20 percent. He didn't try to make any allocation. He basically said, I'd like to help you possibly, but I'm hamstrung by Dobbs' opinion. I've got to do 20 percent. And so that's what the appellate court suggested otherwise, and I don't think it's accurately reflected if you re-judge Hushin's order. Mr. Dancy, you're suggesting that I guess it's a belief that we consider either sending it back to the trial court for that exercise of discretion that you indicate was not given or that we reduce the payments based upon your calculation of $580.30 per month, which I understand is simply dividing his life expectancy number of months into the total lump sum. Does the record reflect what the actual monthly workers' compensation payment would have been? Yes. It's on the workmen's compensation order. It states this is a calculation of X dollars a month for the 42-year life expectancy of Howard Mayfield. It is in the record. And in thinking about it and creative solutions, this was not my thought. It was a suggestion, though, and that is, for instance, and I'll stand by my first prayer for relief, but a court with a 16-year-old and the similar facts might want to award a limited portion, less than 20 percent, to the custodial spouse at this time. And then the court might want to say, well, I'm not sure whether that 18-year-old is going to college or not. So let's exercise our rights under the Dissolution of Marriage Act and let's put the balance of it or some portion of it in a trust for the benefit of the minor, so that if Chelsea decides she wants to go to ICC or the U of I, Howard we know is probably not going to have much available. So we put it in a trust for the benefit of the minor children to see if they're going to go to college. And if they're going to college, then we access it for their benefit. And I think that's the kind of creative solution and option that balances the legitimate competing interests that are here and protects the child and probably protects Howard. If Chelsea doesn't go to school, maybe it goes back to Howard because it was designed as compensation for his injury. I guess the other instance of ad hominem attacks, to go briefly back to that because it just came to mind, was the suggestion, Howard was told and he testified, his work comp attorneys, he asked, is this income, do I have to pay child support on that? And the work comp attorney who was a work comp attorney said, no, you don't. And I think what the work comp attorney was thinking was, well, this is not income. I tell my clients all along, this is not income for federal income tax purposes. So the suggestion that Howard, it's a pretty small community and he had actions, to suggest that Howard hid the settlement from Shannon is not accurate. He thought it was his. And most of his questionable investments occurred before the petition to modify was filed based upon it. He thought it was his to do with what he wanted. He didn't squander or throw it away or invest in other things while there was a petition to modify pending. The petition to modify came months and months after he received it. I wish I had more options, but I think if the court sends it back telling Judge Hushen that he has discretion and he should consider these factors, that would do a bit more work in this case and the cases will, through the creative process, come up with ways to be fair and to balance the competing interest in this case. Thank you.  Please, the court. Dave Lynch, I'm here on behalf of Shannon Mayfield, along with my associate attorney Allison Lynch. If you look at the facts, I think the arguments you brought up here really show what we're really talking about today. The order entered by Judge Hushen did not say he was bound by Dobbs to the point that he could not change the 20%. In fact, what he says was, Dobbs found workers' compensation awards to be income and approved a percentage distribution. He went on to say that this individual man had the option of taking his payments on a monthly basis. First of all, we have to remember this $580 a month figure is a fiction. It has nothing to do with real life. What they do in workman's comp is, at that time especially, you take the lifespan, you settle the number, you divide it by the number of months, that gets you a monthly figure of $580 a month. That had nothing to do with his payment. If you look at the actual settlement contract, his income at the time of the injury was $969 a week, over $4,000 a month. And it's in the contract. It shows exactly what the actual award was to Mr. Mayfield. And the $550 is nothing but a fiction number. To get to that number that they settled comp cases as we know how they settled them, it's been changed, as I understand it now, more to work life than it was lifespan, which would change that $580 number because there's an FDR involved. We must remember that notwithstanding what counsel just stated, Mr. Mayfield acknowledged in court in front of the judge that he had never disclosed to his ex-wife that he had settled this case. She had no idea whatsoever. This came up because of the fact the boy turned 18, the girl who was 15 at the time of the hearing, and him, by the way, was 10 at the time of the injury, came to court to have child support reestablished. During this period he was on comp, he was paying $37 a week for the support of his daughter, $37 and a few odd cents, I think 47, something like that. Mrs. Mayfield, in effect, supported this child entirely. His payments to support his child for the five years that he was on workman's comp, total enough to maybe buy a pair of blue jeans a month, maybe. Now Mr. Mayfield comes to court having spent the money on vacations, homes, hunting land, motorcycles, and says to the court, I shouldn't have to pay these people 20% of my life. We must remember, though, that the court had the power to deviate, and it's in the statute. The statute is very clear. The court has no duty to award 20%, but it does have a duty to say, if I'm not going to award 20%, then it is my job to tell the appellate courts and the people that are here pursuant to statute why I didn't award that. Did the husband ask the court to deviate more than 5%? No. At no point in time was any evidence ever presented to this trial court about deviation. To be very blunt, this started out as a very small motion to modify, which normally, to tell you the truth, I wouldn't probably even do anymore, other than I had done her divorce many years before. We come to the courtroom. We're assuming that he's making some more income. The boy is now gone. There's only one remaining child. And all of a sudden in the middle of this hearing pops up, oh, yeah, by the way, I got $240,000 not too long ago. And I go, oh, you did? And then all of a sudden an affidavit shows up that he had bought a land, he had bought a house, he went on a $5,000 vacation, he went and bought a motorcycle. And during this hearing this all just shows up. At no point in time did he say, Judge, this is child support and subject, therefore I shouldn't have to pay child support for this. No, that was never really an argument. Did he ever ask the judge to deviate? Look at the court's ruling. He does not say he does not have the power to deviate. He does not say that I am limited to what I can do to 25%. In fact, what he says is what I in my brief and what the attorney general's office said in their brief is, he had the ability to take this in another method. It wouldn't have been $580 in some sense a month. It would have been no less than $686, excuse me, get the number here for you, $646.40 a week minimum, which was his DTD payment while the case was pending. But he wanted the money up front because he wanted the lifestyle that went with that. If we look at the statute and we look at what's in there about the reasons that a court can deviate, you look first of all, it says the financial resources of the child. Well, this child is a 15-year-old child. She was 10 when dad was injured. She was about 13 when dad started spending the money that my client didn't know he was spending. And that lifestyle never came to her. Two, the financial resources and needs of the custodial parents. The evidence is clear that my client has almost no income, has been struggling, and her affidavits and her testimony showed that. She's just a very young person with not much money just trying to get by. The standard of living of the child would have stayed. Had that money appeared, that child could have lived in a decent home. That child could have had the monies available. That money could have been set aside for the mother for her future needs. Dad certainly didn't set that money aside for future needs. Dad made the choice to take this $240,000 and spend it now. Spend it today. And now he wants this court to say, ignore the fact that Judge Huchin had the right and the duty to review what was right in this case. Ignore the fact that he was supposed to take into consideration the relevant factors to deviate. Ignore the fact that we didn't tell you to deviate or even ask you about deviation. And look at the facts here. This man was so busy spending this money for his own personal needs, not for his children, the child saw nothing basically, $37.47 a week. And now he comes to you and says, this shouldn't happen. My God, this woman shouldn't have this money. But then look at the educational needs of the child. That's another factor the court has to deviate. And then the financial resources and needs of the noncustodial parent. Those are the reasons. He's already spent 80% of this money before he even knew it existed. If you look at the statute, you look at the case law, you look at the Fourth District case, what he's trying to say to you is, gee whiz, gosh, maybe these kids might get some money. It isn't fair. Come on and do this. We've already got the mechanism built in. It's built in the statute from the day that it was passed. All Judge Huchin had to do was say, I think $46,000 is too much to give this child. Now, once again, remember that for 10 years she'd been living on $37, excuse me, from 10 years old. She'd been living on $37 and some cents a week. I don't think it's fair. She gets that much. I think he should admire that. I'm going to award, use a number, $32,000 or whatever the court felt. He had that discretion. And he never at any point in his decision says he didn't have that discretion. What this case really is all about is this isn't the only time you're going to see this. You're going to see personal injury cases. There's already a bunch of cases on those, finding those to be subject to child support. I come from Peoria, so as you might guess, we have Caterpillar Tractor Company there. And Caterpillar Tractor Company on March 1st every year gives large bonuses. Well, not every year. Some years they do. In recent years it's given large bonuses. The courts have consistently ruled that even if that bonus is $100,000 and there's one child, that $100,000 check, net of the 20%, is to be paid to the ex-wife. Every order in Peoria County that I've been involved with a Caterpillar management person has that exact order, whether it's a $5,000 bonus, $100,000, or in some vice presidents' cases, $500,000, which I've seen. Every one of them says 20% because the children have the right to live in the same lifestyle they would have lived had this not happened. Howard wants to live the lifestyle that came with his bonus. He wants his child to live on $37 a week. That's the basis of what we're here today. That's the basis of the appeal. It is only fair that this daughter, who basically is from age 10 to 15, lived on $37 a week, and the mother who supported her for that five-year period, $46,000. What would that be? Let's see. That's 48. That's roughly 60. That's less than $800 a month of support for that five-year period. I don't think it's inequitable that the judge did that. His order doesn't say he did that. And if you look at the cases, and I also, of course, had a chance to read the AG's brief, and I thought it was very well written. Clearly, this is not a return on capital. It's not a return of your IRA, as this Court has actually ruled on the definition of what is income. I don't think it's qualified on that, and I guess we no longer are arguing the question of whether it's income, which is nice to know that they're really talking the effect, not the number. Any questions? My question would be, does the fact that this award is for the rest of his life, essentially, a compensation in the age of the child, does that factor into it? Well, it really isn't for the rest of his life, because the reason they've set it up the way at that point, now, my understanding isn't talking to workman's comp people. They're now doing it on work life, not life expectancy. The reason they set it up for the work of his life is because if they set it up this way, he would not be precluded from going to Social Security Administration and asking for Social Security Disability, which, as counsel mentioned, he was denied, but he did ask for it at that point. That's why it's a legal fiction to use the lifespan. What it is also, and it's rather clear there, it's even shown in there, attached to the workman's comp award, that he is going to be looking for other work. He is not permanently disabled in any respect. He is disabled to some extent. He's hurt like anybody was or he wouldn't have gotten $300,000. There's never been any order. If you look at the comp, it doesn't say he's permanently disabled. He's been injured. It's going to affect his future earning capacity. I acknowledge that. But if I'm injured and I get a reward and I have young children, they should benefit from the injuries that I have. I'm not saying all of it. And then nothing in this order says that he has all of it. In fact, he's going to have his hunting land. He's going to still have his vacation. He's still going to have his motorcycle. He may have to take a loan out of his house to pay back to the mother a portion of what he has already spent. And was that raised in the trial court, counsel? Those things were not raised in the trial court, counsel. Basically, he didn't ask for a deviation. He just said, well, I got these awards. This is all I got left. It was a very quick trial. There was not much there other than once I found out about the comp case, obviously, a few questions which led to obviously an understanding. Much of that came when he filed his affidavit that day rather than three days prior, as the local court requires, when I found out that he had hunting land, that he had a motorcycle, things we didn't have any about. It's kind of a funny case more times. Usually you have much more knowledge before you walk in, but small cases lead to quick facts sometimes. Counsel, just to follow up on Justice Garmon's question to you about is this for life expectancy or whatever, the order that appears to have a finding here says that the respondent is correct in pointing out that the lump sum payment he received represented his wage differential basis over his 34-year life expectancy. And I think that's a misunderstanding by institution due to the fact if you look at the comp case. Counsel, my question is, that's what the order says. Is there anything, regardless of your interpretation, anything in the record that makes a contrary finding? No. I would note that. Thank you. Anything else? Thank you. Thank you. Rebuttal? Thank you. I came in the case after Howard appeared pro se when the petition to modify was filed, and I was there representing him at the hearing and at the motion to reconsider. Did you speak up, please? And my request for relief at both of those was to modify it, not award the 20% and go with the weekly amount based upon the life expectancy numbers and the work comp award. Did you raise that kind of issue in the appellate court? I mean, the appellate court's discussion is about is this income, it finds out it's income, and then it says in paragraph 33, in so concluding, we point out the trial courts always possess the authority to deviate from the statutory guidelines. It was a severely disappointing appellate. It was a rule 23. They admitted at oral argument that it was a novel issue. They admitted it was an interesting issue, and then they simply booted it out on the basis that he had discretion and there was nothing. I raised the argument. I asked for the relief. You raised the argument that this trial court. It should be apportioned. Your suggestion here is that the trial court, in its order, did not correctly apportion the income. Is that correct? My argument is, and it's in Judge Hushin's one-page order, the court is compelled to follow Dodd's. And continues to find that it's income. Yeah. That that's what the trial court. Right, right, right. I asked that it be differently allocated before Judge Hushin. I asked that he just give $119 a week based upon the lifetime, which is a significant modification downward. And he didn't think he had the discretion. Where does that appear in his order? He believes he didn't have the discretion to deviate. That appears when he says he's compelled to follow Dodd's. And if you read Dodd's, Dodd just said 20%. Well, Dodd's doesn't say that there's no. Precise. Dodd's doesn't say anything, really, as to the issue. Dodd's doesn't say anything about deviation. Right. I don't see that the trial court's order says anything about deviation. And the appellate court agrees that the court has the authority for deviation. So I'm not sure where any error took place. But the error was Judge Hushin thought it was automatic and didn't believe he had the discretion. Where does it say that in his order? That is in compelled to follow Dodd's and the ruling. And just briefly, it seems to me that those are relevant factors. They have to be. I mean, if you had somebody that didn't foolishly blow it when he didn't realize he could have it all, you could be dealing with a 17-year-old and a $50,000 payment six months before she turns 18 and goes to school. Those things can come up again. And the bonus from Caterpillar is completely an opposite. This was not a bonus. That's wages. You're going to get one next year. This was a disability payment. And whether they've changed the factor or not, they were factoring in the fact that Howard's going to be, cannot continue his former employment. He worked out of the union hall. He was either a boiler maker or an iron worker. The Social Security decision admitted that he's never going to be able to do that again, but he can answer the phone for somebody or something like that. That's what their occupational expert put in. So the fact that he's disabled, the nature and extent of disability should be a factor that the court takes into consideration with everything else in exercising that discretion. Counsel, I was listening. The Justice Tice question, I mean, you're drawing a lot from the word compelled. I mean, does compelled to follow Dodd mean I have no choice but to follow Dodd? Or does compelled merely mean I've read Dodd and I'm compelled to do the same thing that Dodd did? And I guess I may be coloring it from Judge Houchen's comments in the motion to reconsider, where he basically just, he indicated he thought 20 percent is what he had to do. And I guess where in Dodd's, the last paragraph of Dodd's, respondent raises only the issue of whether the lump sum workers' compensation award constitutes income for the purpose of determining his obligation. Respondent does not raise, and therefore has waived, the issue of whether the trial court properly determined the specific amount of the child support respondent was ordered to pay. That's Dodd's? That's Dodd's. Okay. But that's not Judge Houchen. Compelled meant he didn't have any other choice in his ruling. And he had before him options. And he didn't think he could exercise the reduction option. But even reading his order, right after he says he's compelled to follow Dodd's, he says Dodd's found workers' compensation awards to be income. That was the finding that he made. And then he went on to say it had an order of percentage. So we can argue that he may have said something, but it's not in his order. No, that's correct. And I will take responsibility. David and I practice in the Tenth Circuit. And the Tenth Circuit has electronic recording now. So we don't have court reporters sitting in the courtroom. And Woodford County came in, and they had all the accoutrements of recording. You have to order a court reporter there. And I foolishly, in retrospect, assumed that we were being recorded because they had all the accoutrements. And then when I asked to order the transcript, they said, no, no, no, transcript? You have to order your own trial court reporter. So that's on me. It sounds like your position really is that you want a ruling from this court that there has to be an exercise of discretion. Even in this civil context, there has to be an exercise of discretion by the trial court, regardless that we have a situation here of just accepting your argument. And I'm not saying we're accepting your argument, but just for purposes of argument, let's say we're accepting your argument that he had discretion that he didn't know he could exercise. And yet the appellate court, in reviewing it, looks at all the same factors, the same record that the trial judge did and said this, that he got it right. Exercising discretion or not, he got it right. And you would have us say, well, the fact that he didn't go through step one, two, three, four, and look at all these factors, you have to send it back. I'm saying the appropriate relief is to send it back to Judge Hooshin with indicating that he has discretion and let him exercise that discretion. And I think the appellate court thought otherwise, obviously. Well, they make the statement in their opinion as well that they say that his opinion was consistent with that. No, I understand that. But Hooshin did not consider alternatives. He did not consider factors or options. He simply awarded the 20%. And returning it to him with an indication to all five districts that they have abuse of discretion and need to consider factors will allow him to do that. And maybe his decision after all of that will be 20% under these circumstances, but it will be after a review and assessment of the full context. Thank you. Thank you. Case number 114655, Shannon A. Mayfield v. Howard R. Mayfield is taken under advisement as agenda number 12. Counsel, thank you for your argument.